**STATE OF TEXAS, Petitioner,**

v.

**UNITED STATES of America, and Interstate Commerce Commission, Respondents.**

**No. 87–4725.**

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1988.

Robert Ozer, Anne Swenson, Asst. Attys. Gen., Gen. Litigation, State & County Affairs Div., Austin, Tex., for State of Tex.

Robert S. Burk, Gen. Counsel, I.C.C., Michael L. Martin, Edwin Meese, III, Atty.

Gen., Robert B. Nicholson, John P. Fonte, Dept. of Justice, Washington, D.C., for U.S.A. & I.C.C.

Paul Rogers, Gen. Counsel, Charles D. Gray, Assoc., Washington, D.C., for Nat. Ass'n of Regulatory Utility Com'rs.

Phillip Robinson, Mert Starnes, Austin, Tex., for Central Freight Lines.

William F. Pugh, Alexandria, Va., for Nat. Mtr. Freight Traffic Ass'n.

Robin A. McHugh, Helena, Mont., for Montana.

James T. Quinn, J. Calvin Simpson, Janice E. Kerr, San Francisco, Cal., for Public Utilities Com'n of the State of Cal.

Jerry Prestridge, Austin, Tex., for Merchants Fast Motor Lines.

Hugh T. Matthews, Dallas, Tex., for Steere Tank Lines & Great Western Trucking.

Byrd R. Latham, P. Michael Cole, Asst. Attys. Gen., Athens, Ala., for Alabama Public Service Com'n.

Robert J. Higgins and Harriet Grant, Washington, D.C., for Intern. Broth. of Teamsters, etc.

Keller & Heckman, Terrence D. Jones, Washington, D.C. for Nat. American - Wholesale.

William P. Jackson, Jr., Arlington, Va., Law Dept., Armstrong World Ind., Lancaster, Pa., for Armstrong and Reeves Transp. Co. of Georgia.

Kevin M. Williams, Gen. Counsel, Alexandria, Va., for Regular Common Carrier Conference.

Before POLITZ, JOHNSON and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Interstate Commerce Commission seeks a preliminary injunction to stay certain proceedings in a Texas state court. According to the Commission, the state proceeding concerns claims identical to those pending before this court in an appeal from a declaratory ruling made by the Commission. Convinced that the state court proceeding poses no serious threat to our jurisdiction to hear the administrative appeal, we deny the motion.

I

The State of Texas has appealed directly from an order of the ICC determining that certain truck shipments made by Reeves Transportation Company within Texas are interstate—rather than intrastate—in nature. The consequence of this ruling is that the shipments, which Reeves made under an ICC certificate, are not subject to the rules of the Texas Railroad Commission. The main basis for the state's appeal is that the ICC lacked jurisdiction to issue a declaratory ruling as to the interstate status of a shipper. The controversy revolves around the proper interpretation of *Service Storage & Transfer Co. v. Virginia,* 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959).[1]

Reeves transported carpet made by Armstrong Mills from Arlington, Texas, to other points within the state, but did not obtain authorization from the state commission. The state considered the shipments intrastate, and began an investigation of Reeves in 1985. Because the shipments involved goods originating in Georgia, Reeves and Armstrong petitioned the ICC for a declaratory ruling that the shipments were interstate and beyond the state's regulatory authority. While the ICC proceedings were pending, the Attorney General of Texas filed an enforcement action against Reeves in Texas state court, styled *State of Texas v. E & B Carpet Mills, a division of Armstrong World Indus., and Reeves Transp. Co.,* No. 386,524, 353d Texas Judicial District. The state also intervened in the ICC proceedings, but the Commission denied Texas' motion to stay the administrative proceeding pending the outcome of the state court suit.

---

**1.** Obviously, we intimate no opinion as to merits of the administrative appeal or the state's likelihood of success.

In 1986, after notice and hearing, the ICC ruled that the shipments were interstate and thus within the ICC's exclusive regulatory authority. On this basis, Armstrong filed a complaint in federal district court seeking to enjoin the Texas officials from pursuing the state court action. *E & B Carpet Mills v. Mattox*, Civ. No. A–86–446 (W.D.Texas). As an intervening plaintiff, the ICC supported Armstrong's motion for a preliminary injunction. In October, 1986, the district court denied the injunction, finding that Armstrong had failed to prove irreparable injury because any damages sustained by Armstrong could be compensated by law. Neither Armstrong nor the ICC appealed from the decision, although entitled to by 28 U.S.C. § 1292(a)(1). In October, 1987, the ICC filed its own motion for a preliminary injunction asserting irreparable injury to the federal government. The district court has not ruled on the Commission's request.

Meanwhile, the ICC denied petitions to reconsider its declaratory order. The State of Texas filed this direct appeal from the administrative decision. The ICC now asks this court to enjoin the state court proceeding pending our review of the ICC's order.

## II

■ The All Writs Act, 28 U.S.C. § 1651,[2] gives this court limited authority "to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels." *FTC v. Dean Foods Co.*, 384 U.S. 597, 604, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966). Moreover, because a federal agency seeks the injunction, the ICC's motion is not directly precluded by the strictly enforced rule of the Anti–Injunction Act, 28 U.S.C. § 2283.[3] *See Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225–26, 77 S.Ct. 287, 290–91, 1 L.Ed.2d 267 (1957); *NLRB v. Nash–Finch Co.*, 404 U.S. 138, 92

S.Ct. 373, 30 L.Ed.2d 328 (1971); *Tampa Phosphate R. Co. v. Seaboard Coast Line R. Co.*, 418 F.2d 387, 394 (5th Cir.1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970). Nevertheless, we are guided by the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power. *See generally Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971).

■ It is difficult to see why an injunction is necessary to preserve our jurisdiction over the case. The state enforcement proceeding arguably involves application of the ICC's declaratory order; no doubt the order constitutes Armstrong's primary defense. But the state court does not have the power to review the ICC's order for error and the state court's interpretation obviously has no binding effect on our decision in that regard. If we already had reviewed and affirmed the ICC order, *after* which the state brought an enforcement proceeding, this court would not be compelled to enjoin the proceeding. Rather, as was the case in *Service Storage*, the state court's application of the ICC's order could be reviewed in due course by the United States Supreme Court.

■ In fact, as this hypothetical demonstrates, the ICC seeks this injunction because it believes the enforcement proceeding interferes with its own jurisdiction, not ours. In other words, the ICC contends that once it has entered a declaratory order, no proceeding in which the order might constitute a defense may be brought in any state court. While such a rule might better effectuate the ICC's decisions, it has little to do with our power to review the Commission's work.[4]

Although somewhat similar to this case, *Tampa Phosphate, supra,* does not control our decision. There a railroad brought condemnation suits to establish a right-of-way for a new line, even though the ICC had

---

**2.** "[A]ll courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

**3.** "A court of the United States may not grant an injunction to stay proceedings in a State court

except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

**4.** In this regard we also note that the second of the three exceptions in the Anti–Injunction Act contains the same language as the All Writs Act,

ruled both that the proposed line would be subject to federal regulation as interstate commerce and that no ICC certificate would be issued. A federal district court preliminarily enjoined the state-court condemnation suits, and we affirmed. However, unlike this case, the *Tampa Phosphate* court relied on a jurisdictional statute expressly authorizing injunctions against construction of an .unauthorized railroad line. *See Tampa Phosphate*, 418 F.2d at 393. Here the ICC points to no authority indicating that Congress has tipped the balance in favor of federal interests. Unlike *Tampa Phosphate*, then, we have no authority to issue an injunction beyond that necessary to protect our own jurisdiction. Because our jurisdiction is not threatened here, the Interstate Commerce Commission's motion for a preliminary injunction is DENIED.

insofar as it permits a federal court to issue an injunction "where necessary in aid of its jurisdiction." In cases decided under this exception, courts have interpreted the language narrowly, finding a threat to the court's jurisdiction only where a state proceeding threatens to dispose of property that forms the basis for federal in rem jurisdiction, *see, e.g., Signal Properties, Inc. v. Farha*, 482 F.2d 1136, 1140 (5th Cir.1973), or where the state proceeding threatens the continuing superintendence by a federal court, such as in a school desegregation case. *See* Wright & Miller Federal Practice & Procedure § 4225. In no event may the "aid of jurisdiction" exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision. *See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295–96, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970).